IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| LORNA SAYLOR o/b/o A.H., ) | |
| ) | |
| ) | CIVIL ACTION NO. 0:05-53-MBS-BM |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| JO ANNE B. BARNHART ) | **REPORT AND RECOMMENDATION** |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

The Plaintiff filed the Complaint in this action, pro se, pursuant to 42 U.S.C. § 405, seeking judicial review of the final decision of the Commissioner wherein her granddaughter ("Claimant") was denied continued Supplemental Security Income (SSI). This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

Pursuant to Local Rule 83.VII.04, D.S.C., the Plaintiff in a Social Security case may file a written brief within thirty (30) days of the filing of the Defendant's answer. Plaintiff failed to file a brief within this time period, and by order entered June 20, 2005 the Defendant was provided forty (40) days to file its own brief in support of the Commissioner's decision. Local Rule 83.VII.05, D.S.C. After the Defendant's brief was filed, Plaintiff did file her own brief on July 29, 2005.

The record in this case reflects that Plaintiff originally filed an application for SSI on behalf of the Claimant, a minor child, on July 28, 1998, and that SSI was awarded on October 19,



1998 based on disability due to mental retardation that met the requirements of § 112.05E of the Listings of Impairments.[1] (R.pp. 26, 40). However, the Claimant's disability status was subsequently terminated as of September 2002 following a continuing disability review based on the finding that she no longer had an impairment or combination of impairments of such severity as to meet the standards of any Listing. (R.pp. 27, 29, 32-35). The cessation of SSI benefits for the Claimant was confirmed upon reconsideration, following which Plaintiff requested a hearing before an Administrative Law Judge (ALJ), which was held on July 27, 2004. (R.pp. 209-228). The ALJ thereafter denied Plaintiff's claim in a decision issued September 24, 2004. (R.pp. 12-16). The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 4-7).

Plaintiff then filed this action in United States District Court seeking a reversal of the decision and the reinstatement of Claimant's SSI benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that the Claimant was properly found to no longer be entitled to SSI benefits as of September 2002.

## Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978);

---

[1] In the Listings of Impairments, "[e]ach impairment is defined in terms of several specific medial signs, symptoms, or laboratory test results." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). A claimant is presumed to be disabled if their impairment meets the criteria of an impairment set forth in the Listings. See 20 C.F.R. §§ 416.925, 416.926 (2003).



Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)). The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

### Discussion

In order to be considered "disabled" within the meaning of the Social Security Act, an individual under the age of eighteen (18)[2] must have a medically determinable physical or mental impairment which results in marked and severe functional limitations, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) consecutive months. 42 U.S.C. § 1382c(a)(3)(C)(I). An impairment is deemed to cause marked and severe functional limitations if 1) it meets or medically equals in severity the set of criteria for an impairment listed in the Listings of Impairments, or 2) it is functionally equal in severity to a listed impairment. 20 C.F.R. § 416.924(d) (1999).

---

[2]The Claimant was six (6) years old when she began receiving SSI in October 1998, ten (10) years old at the time of the initial disability cessation in September 2002, and twelve (12) years old at the time of the ALJ's decision in September 2004. (R.p. 51).



In his decision, the ALJ found that, although the Claimant suffers from attention deficit hyperactivity disorder (ADHD) and a learning disorder, there had been medical improvement in her impairment such that at the time of the most recent determination her impairment no longer met or medically or functionally equaled Listing 112.05E. The ALJ further found that the Claimant had no impairment or combination of impairments which met or medically equaled the requirements of any other current listing, and that the Claimant's disability therefore ceased in September 2002. (R.pp. 15-16). Plaintiff argues in her brief that the Claimant is in special education classes and should be able to continue to receive SSI, although no specific grounds for a continuation of these benefits is cited. However, in her Complaint, Plaintiff complains that the ALJ relied on information from the Claimant's "homeroom teacher", who was not qualified to give information about her daughter, and that this teacher in fact gave a "false statement". Plaintiff further asserts in her Complaint that one of the reasons the Claimant's SSI was stopped was because her [Plaintiff's] husband, "after a (4) year battle", started to get SSI.

After careful review of the decision and record in this case, the undersigned finds that substantial evidence supports the ALJ's decision, and that it should therefore be affirmed. As noted, Claimant was originally determined to be entitled to disability benefits based on a finding that she met the criteria of Listing 112.05E [Mental Retardation]. A claimant is entitled to disability under this Listing if they have significantly subaverage general intellectual functioning with deficits in adaptive functioning. The required level of severity for this disorder is met if the claimant has (for purposes of Claimant's application) a valid verbal, performance, or full scale I.Q. of 60-70, resulting in at least one of the following: marked impairment in age-appropriate social functioning, marked impairment in age-appropriate personal functioning, or marked difficulties in

4



maintaining concentration, persistence, or pace.  Claimant was determined to have been disabled as of July 1998, when she was six (6) years old, after psychological testing revealed that she had a verbal I.Q. score of 68, a performance I.Q. of 57, and a full scale I.Q. of 59, combined with problems in concentration, persistence, and pace.  (R.pp. 13, 204). I.Q. scores between 50 or 55 and approximately 70 are indicative of mild mental retardation. Diagnostic & Statistical Manual of Mental Disorders-Text Revision (2000) (DSM-V).

However, entitlement to benefits is subject to termination if substantial evidence shows medical improvement in a previously disabling impairment; 20 C.F.R. § 404.1594; and in his decision, the ALJ found that Claimant's medical impairment has improved such that her disability ceased in September 2002. (R.p. 16). The record reflects that psychologist Douglas Ritz, who administered Claimant's I.Q. test in 1998, indicated at that time that the Claimant would need to be retested on a regular basis to determine if continued educational stimulation increased her cognitive skills. (R.p. 122).[3]  The record shows that this did in fact occur, and that by April 2002 Claimant had a verbal I.Q. of 79, a performance I.Q. of 79, and a full scale I.Q. of 77.  (R.p. 149). Hence, by 2002, Claimant's I.Q. testing showed that she no longer had an I.Q. below 70 as required by Listing 112.05.     Further, Plaintiff's 2002 I.Q. scores were also no longer indicative of mild mental retardation, as the DSM-IV characterizes I.Q. scores between 71 and 84 as representing borderline intellectual functioning, not mental retardation. See Boyd v. Apfel, 239 F.3d 698, 702 n. 5 (5th Cir. 2001). Two state agency psychological consultants, Kevin King and Dr. Pearce McCall,

---

[3] Indeed, under the relevant regulations, I.Q. tests obtained before the age of seven (7) are considered current for one (1) year if the tested I.Q. is 40 or above, with I.Q. tests between the ages of seven (7) and sixteen (16) being considered as current for two (2) years. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 112.00(C)(10).



also both agreed that Claimant no longer had an impairment or combination of impairments that met or medically equaled a Listing. (R.pp. 188, 197).[4] See Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) [ALJ may properly give significant weight to assessments of non-treating physicians]. Based on this record and evidence, the ALJ determined that Claimant's condition no longer met the requirements of a Listing by 2002. (R.p. 13).

The ALJ then turned to consideration of whether Claimant's impairment functionally equaled the severity of a listed impairment. In assessing functional equivalence, the ALJ was required to consider how Claimant's impairment affected her ability to function in six areas (or "domains") of functioning. 20 C.F.R. § 416.926a(b)(1). These six domains are as follows: 1) acquiring and using information, 2) attending and completing tasks, 3) interacting and relating with others, 4) moving about and manipulating objects, 5) caring for herself, and 6) health and physical well-being. To establish functional equivalence, the Claimant must have a medically determinable impairment or combination of impairments that results in "marked" limitations in two (2) domains, or an extreme limitation in one (1) domain. § 416.926a.[5] After review of Claimant's medical records and the testimony at the hearing, the ALJ determined that Claimant's impairment was not sufficiently severe to constitute the functional equivalent of a Listing by September 2002, that she was no longer disabled as of that date, and that she was therefore no longer entitled to SSI benefits

---

[4] Significantly, King was the same consultant who had previously determined that Claimant's impairments satisfied Listing 112.05E in 1998. (R.p. 204).

[5] A "marked" limitation occurs when a claimant's impairment or combination of impairments interferes seriously with her ability to independently initiate, sustain, or complete activities. § 416.926a(e)(2)(I). An "extreme" limitation is an impairment or combination of impairments which interferes very seriously with her ability to independently initiate, sustain, or complete activities. § 416. 926a(e)(3)(I).

6



after November 30, 2002. (R.pp. 13-15). The undersigned can find no reversible error in the ALJ's decision.

While Claimant was diagnosed with ADHD and a learning disorder, both of the state agency psychological consultants found that by September 2002 she had "less than marked" limitations in the domain of acquiring and using information, which relates to how well she could learn information and use the information she had learned, as well as in the domain of interacting and relating with others, which involves how well the Claimant could initiate and sustain emotional connections with others, develop and use language, cooperate with others, comply with rules, respond to criticism, and respect other's possessions. (R.pp. 192, 201); see 20 C.F.R. §§ 416.926a(g)(2)(iv) and (i)(2)(iv).[6] With respect to the domain of attending and completing tasks, which involves how the Claimant could focus and maintain attention and follow through with activities, one of the two psychological consultants, Mr. King, did find that Claimant had a marked limitation in this domain. (R.p. 201). However, the ALJ agreed with Dr. McCall, who found that the Claimant had a less than marked limitation in this domain. (R.pp. 15, 192); see Hays, 907 F.2d at 1456 [it is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]. Even if the ALJ had accepted King's finding with respect to this domain, it still would not have resulted in a finding of functional equivalence, as it was necessary to find that Claimant had marked limitations in two (2) domains to establish functional equivalence. See § 416.926a.

---

[6]While it is questionable whether the ALJ's finding that the Claimant had no limitation in the domain of interacting and relating to others is supported by substantial evidence, even assuming arguendo that the finding for this domain should have been less than marked, as was found by both of the state agency psychological consultants, such a finding would still not have entitled the Claimant to continued SSI benefits.



As for the three remaining domains, they relate more to the Claimant's physical ability to perform activities, and do not therefore effect her claim for disability, which is based on her mental impairment. In any event, as correctly noted by the Commissioner, neither state agency consultant found that the Claimant had any limitation in these domains. (R.pp. 190, 199).

In addition to the records and opinions of the psychological consultants, the ALJ also reviewed the other evidence in the file as well as the testimony from the hearing. While this evidence confirms Plaintiff was a slow or low average learner with ADHD, the ALJ did not find it reflected a marked limitation in any two domains such as to entitle the Claimant to continue with SSI benefits. See generally, (R.pp. 148-151, 153-154, 158, 166, 171). Again, the undersigned can find no reversible error in these findings. Questionnaires submitted by the Plaintiff during the Claimant's disability review in June 2002 also note social and cognitive skills consistent with the ALJ's determination. (R.pp. 89, 100, 106, 111). Indeed, Plaintiff's main argument for continued SSI for the Claimant appears to rest primarily on the fact that the Claimant is in special education and will probably continue to need special education for the rest of her schooling. However, this fact alone does not entitle Claimant to continued SSI if she does not otherwise meet the requirements of a Listing or the functional equivalent of a Listing. 20 C.F.R. § 416.924a(b)(7)(iv) ["The fact that you do or do not receive special education services does not, in itself, establish your actual limitations or abilities."]; Baker by Baker v. Secretary, 874 F.Supp.41, 46 (N.D.N.Y. 1995); *cf.* Jamerson v. Chater, 112 F.3d 1064, 1067 (9th Cir. 1997) [Claimant's requirement for special education is not per se evidence of disability]; Flener ex rel. Flener v. Barnhart, 361 F.3d 442, 448 (7th Cir. 2004) [Plaintiff's satisfactory performance in special education classes supported ALJ's conclusion that Plaintiff was not disabled within meaning of guidelines]. See also Hays, 907

8



F.2d at 1456-1458 [agreeing that medical evidence did not show that Plaintiff's condition met the requirement of a Listing]. Further, the undersigned finds no evidence to support Plaintiff's claims concerning false information being provided by a teacher or any bias on account of her husband receiving SSI. These arguments are without merit, and do not support an overturning of the decision.

## Conclusion

Substantial evidence is defined as " … evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision. Blalock, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Claimant's medical condition had improved such that she was no longer disabled as of September 2002. Therefore, it is recommended that the decision of the Commissioner be **affirmed**.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina
January 4, 2006

### Notice of Right to File Objections to Magistrate Judge's Report and Recommendation
### &
### The Serious Consequences of a Failure to Do So

  The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of its filing. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be delivered to a United States District Judge fourteen (14) days after this Report and Recommendation is filed. Advance Coating Technology, Inc. v. LEP Chemical, Ltd., 142 F.R.D. 91, 94 & n. 3 (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. See Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410 (D.S.C. 1993).

  During the ten-day period, <u>but</u> <u>not</u> <u>thereafter</u>, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he wishes the United States District Judge to consider any objections. Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections. Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. See United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-47 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509 (6th Cir. 1991). See also Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-19 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

See also Branch v. Martin, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections. See Wright, supra,; and Small v. Secretary of HHS, 892 F.2d 15, 16 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing addressed as follows:

<div align="center">

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

10

</div>

